## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| CHAMPION ROOFING, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CHAMPION WINDOW MANUFACTURING & ) | |
| SUPPLY CO., LLC, CHAMPION WINDOW ) | |
| COMPANY OF CHICAGO, LLC AND ) | |
| CHAMPION WINDOW COMPANY ) | |
| OF MERRILLVILLE, LLC, ) | |
| ) | |
| Defendants. ) | No. 13 C 5478 |
| _____ ) | |
| CHAMPION WINDOW MANUFACTURING ) | Judge Rebecca R. Pallmeyer |
| & SUPPLY CO., LLC, CHAMPION ) | |
| WINDOW COMPANY OF CHICAGO, LLC ) | |
| AND CHAMPION WINDOW COMPANY ) | |
| OF MERRILLVILLE, LLC, ) | |
| Counter-Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| CHAMPION ROOFING, INC., ) | |
| ) | |
| Counter-Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Champion Roofing, Inc., has been in the business of providing residential and commercial roofing services to consumers in the Chicago area since 1999. The company has aggressively advertised its services using the name and mark CHAMPION ROOFING and appears to have achieved substantial name recognition. In late 2012, Defendant Champion Window Manufacturing and Supply Company, LLC, began offering roofing services, in addition to its traditional business installing windows and patio awnings, also using the name "Champion Roofing." Significant consumer confusion arose, and Plaintiff seeks a preliminary injunction to bar Defendant Champion Window from using the name or mark "Champion Roofing" in connection with roofing services. The court heard evidence in support of the motion for a preliminary injunction and,

for the reasons explained here, now grants that motion. The court's analysis of the evidence also explains why Defendant's motion for a preliminary injunction, filed as a defensive response to this lawsuit, must be denied: Plaintiff and Defendant have operated in the same marketplace for more than a decade, using an identical name to promote their non-overlapping businesses. Yet despite years of this co-existence, there was no evidence that any consumer is likely to be misled concerning the source of Defendant's traditional window and awning business. Though Defendant has existed longer than Plaintiff, Defendant is the new entrant in the roofing business, and Plaintiff has presented evidence that it is likely to succeed in establishing that Defendant's use of the name "Champion" for promotion of roofing services violates the Lanham Act.

## **FACTS**

In January 1999, Harry Friedman and Joseph Smith formed a roofing company called Champion Roofing, Inc. (Tr. of Sept. 16, 2013, hereinafter "Tr.", at 19-20.) The company was incorporated in the State of Illinois in January 1999 and began using its CHAMPION ROOFING mark for roofing services early in 1999. Since 1999, Champion Roofing has provided residential and commercial roofing services to consumers in the Chicago area under the CHAMPION ROOFING mark. Computer records show that since 1999, Plaintiff has received more than 29,000 contacts from customers in counties in and around Chicago. (Tr. 26, 29.)

Champion Roofing has spent more than $2.2 million to advertise and promote the CHAMPION ROOFING mark since 1999, employing a variety of advertising and marketing strategies: direct marketing (distribution of postcards, flyers, "door hangers," letters, and coupons); radio and television advertisements; a website and Facebook page; internet advertisement using search engine optimization and Google AdWords; and advertisements in the Yellow Pages, Angie's List, Blue Book, Better Business Bureau publications, and Best Pick Reports. (Tr. 37-50.) Champion Roofing has been awarded recognition and certifications from Angie's List and Best Pick Reports, and by roofing system manufacturers that certify Champion Roofing as qualified to install

2

their products.  Champion Roofing has had sales of over $37 million in the last five years.  (Tr. 22-24.)

Defendant Champion Window Manufacturing and Supply Co., LLC, was founded in 1953 as a manufacturer of aluminum storm windows, storm doors, awnings, and screen rooms.  (Tr. 110-112.)  Over the next fifty years, it grew from a small family-owned business located in Cincinnati, Ohio, into a major retailer of "home exterior products and services," including windows, siding, and sunrooms.  (Tr. 116-17.)  Champion Window owns federal trademark registrations for the CHAMPION word mark for goods described as "non-metal new and replacement windows, patio and sliding doors and window screens" and for services described as "installation of replacement windows, window screens, storm windows and siding and construction of sun porches, enclosed patios, and room additions."  (Service Mark and Trademark, Ex. F to Decl. of James John Saul, Attach. 3 to Champion Roofing's Mem. in Supp. of Mot. for Prelim. Inj. [19-3], at 27, 28; Tr. 145.)  Champion Window's CHAMPION marks have been registered since 1998.  Champion Window owns no federal registrations for roofing services.

Champion Window has operated in the Midwest since the 1990's, with facilities in St. Louis, Missouri; South Bend, Indiana; and Milwaukee, Wisconsin.  In 2002, a local affiliate, Champion Window of Chicago, LLC, was incorporated, and now operates in Elmhurst, Illinois, two miles from Champion Roofing's office in Bensenville.  Champion Window of Chicago is a "troubled subsidiary" of Champion Window and is operating at a loss.  (Tr. 179.)

For more than ten years, Champion Window of Chicago and Champion Roofing operated in the same geographic area, without any objection from one another.  In fact, in 2008, an employee of Champion Window of Chicago contacted Champion Roofing to request an estimate for a roofing contract, a contact reflected in Champion Roofing's database.  (Tr. 51-54.)  Then in fall 2012, Champion Window began to advertise roofing services under the "Champion" name in several parts of the country, including parts of the Chicago area.  (Tr. 157-58.)  The advertising campaign

included print, television, radio, and Internet advertisement, as well as widespread distribution of coupons offering discounts on roofing services. Champion Window contends it performed a roofing replacement job in Northern Indiana as early as August 2010, but concedes it did not do a "total roof replacement" in Chicago until October 2012. As of the time of the hearing, Champion Window's roofing work was performed by subcontractors. (Tr. 168.) Windows, patios, and sun porches still constitute the bulk of Champion Window of Chicago's business: in 2013, Champion Window of Chicago had done $4 million in overall business, only $350,000 of which was attributable to roofing services. (Tr. 164.)[1] There is no evidence of any customer confusion resulting from the similar names prior to this year.

Champion Window's entry into the Chicagoland area roofing market has, in contrast, resulted in numerous instances of actual customer of confusion. On February 15, 2013, a Champion Roofing customer named Catherine Disterheft submitted a coupon to a Champion Roofing estimator, Chris Hartman. Hartman himself evidently believed the coupon had been issued by his own employer, Champion Roofing: he contacted Harry Friedman, the company's President, to ask why the company was issuing coupons for substantial ($1800) discounts without advising sales staff. Mr. Friedman told Mr. Hartman the company had not offered any such coupons and asked Mr. Hartman to show him the coupon. When he saw it, Friedman learned for the first time that Champion Window had begun offering roofing services under the Champion name. (Tr. 54-56.) Between February and September 2013, some thirteen prospective customers presented Champion Roofing staff with coupons issued by Champion Windows, in the apparent belief that Champion Roofing was the source of those coupons. (*E.g.*, Tr. 101, 102, 103; Decl. of Aharon Friedman, Attach. 5 to Champion Roofing's Mem. in Supp. of Mot. for Prelim. Inj., [19-5] ¶¶ 3-7;

---

[1] On occasion, Plaintiff Champion Roofing has done some window installation at the request of customers. Harry Friedman estimated that this work accounts for no more than $10,000 of Plaintiff's $37 million business. (Tr. 51.)

Decl. of Tony Kovco, Attach. 6 to Champion Roofing's Mem. in Supp. of Mot. for Prelim. Inj., [19-6], ¶ 3; Decl. of John Biesiad, Attach. 8 to Champion Roofing's Mem. in Supp. of Mot. for Prelim. Inj. [19-8], ¶¶ 3, 4; Decl. of Rich Newell, Attach.10 to Champion Roofing's Mem. in Supp. of Mot. for Prelim. Inj. [19-10], ¶ 3.) Several customers refused to do business with Champion Roofing when Champion Roofing refused to honor its competitor's coupon. (Tr. 59, 104-05.) In another episode, a customer negotiated with Champion Roofing for a discount for himself and several neighbors. Then when the customer saw the Champion Window coupon, he was angry and embarrassed, as he concluded that the discount he had negotiated was less substantial than one available to any customer who held the coupon. (Tr. 89-90; Decl. of David Friedman, Attach. 9 to Champion Roofing's Mem. in Supp. of Mot. for Prelim. Inj. [19-9], ¶ 3.)

Other instances of confusion include four episodes in which a customer submitted a request for an estimate to one of the parties and then contacted the other "Champion" business to follow up. (*See, e.g.*, Decl. of Harry Friedman, Attach. 1 to Champion Roofing's Mem. in Supp. of Mot. for Prelim. Inj. [19-1] (hereinafter, "Friedman Decl."), ¶ 33; Decl. of Esmeralda Santos, Attach. 7 to Champion Roofing's Mem. in Supp. of Mot. for Prelim. Inj. [19-7], ¶ 3.) In another instance, a customer noted the endorsement of Champion Roofing that appears in the Best Pick Reports and specifically referred to that endorsement as "one of the reasons" he had contacted Champion Window. (Dep. of Caleb Herr, Ex. B to Supplemental Decl, of James John Saul [36-2], at 66.) Still another customer expressed confusion when a Champion Roofing Estimator told him that Champion Roofing could not provide him with replacement windows for his home. (Tr. 95.)

## **ANALYSIS**

A party seeking a preliminary injunction is required to demonstrate a likelihood of success on the merits, that it has no adequate remedy at law, and that it will suffer irreparable harm if the relief is not granted. *Ty, Inc. v. Jones Group*, 237 F.3d 891, 895 (7th Cir. 2001) (citing *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). If the moving party makes these showings,

the court will consider the harm imposed on the nonmoving party from entry of the injunction.  *Id.* (citing *Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 314 (7th Cir. 1994)).  And the court must also take account of the consequences to the public from the grant or denial of the injunction. *Id.* Sitting as a court of equity, the court then weighs all these factors, employing a sliding-scale approach.  *Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002) (citing *Abbott Labs.*, 971 F.2d at 12).  Thus, the stronger the moving party's showing, "the less the balance of harms need weigh in its favor."  *Id.* at 811.

## A.  Likelihood of Success

The court considers, first, the likelihood that Plaintiff Champion Roofing will prevail on the merits of its trademark action under the Lanham Act, 15 U.S.C. § 1125(a).  To do so, Plaintiff must establish that it has a protectable trademark and that Defendant's use of the mark is likely to cause confusion among consumers.  *See Ty*, 237 F.3d at 897.

The court is satisfied that Plaintiff has made a showing, sufficient to support a preliminary injunction, that it owns a protectable trademark in its CHAMPION ROOFING mark.  Since 1999, Plaintiff has provided residential and commercial roofing services under that mark to consumers in locations throughout the Chicagoland area.  Although no survey evidence was presented, it is reasonable to conclude that the mark has achieved secondary meaning because it has been "used so long and so exclusively by [Plaintiff] in association with its goods or services" that consumers would come to believe that roofing services provided under the name "Champion Roofing" are furnished by Plaintiff.  *See Packman v. Chicago Tribune Co.*, 267 F.3d 628, 641 (7th Cir. 2001). Through its apparently exclusive use, since 1999; through extensive multi-media advertising, described above; and through substantial sales volume, the CHAMPION ROOFING mark appears to be "uniquely associated" with Plaintiff's business for roofing services in this area.  *See Planet Hollywood (Region IV), Inc. v. Hollywood Casino Corp.*, 80 F. Supp. 2d 815, 878 (N.D. Ill. 1999) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.,*, 505 U.S. 763, 766 n.4 (1992)).  The court concludes

6

that Champion Roofing's extensive advertising efforts and fourteen years of use renders its mark a strong and distinctive one.

In assessing the likelihood of consumer confusion, the court ordinarily considers a variety of factors, including (1) the similarity between the marks in appearance and suggestion, (2) the similarity of the products, (3) the area and manner of concurrent use of the products, (4) the degree of care likely to be exercised by consumers, (5) the strength of the plaintiff's marks, (6) any evidence of actual confusion, and (7) the defendant's intent to palm off its goods as those of the plaintiff. *Ty*, 237 F.3d at 897–98; *Meridian Mutual Ins. Co. v. Meridian Ins. Group, Inc.*, 128 f.3d 1111, 1115 (7th Cir. 1997). This case is the comparatively unusual one in which Plaintiff has presented substantial evidence of actual consumer confusion, a factor deemed of particular importance in the analysis. *Id.* On several occasions in the months since Champion Windows has ventured into the roofing business, consumers have presented Plaintiff with Defendant's coupons or asked about discounts advertised by Defendant. Plaintiff's own staff have expressed confusion about the coupons, and at least one customer was dismayed to learn that Plaintiff does not provide window replacement, the business in which Defendant (but not Plaintiff) has engaged for many years. Though Defendant objected to much of this evidence on hearsay grounds, the Seventh Circuit has recognized that testimony concerning comments made by consumers is admissible to establish their confused state of mind. *Israel Travel Advisory Serv. v. Israel Identity Tours, Inc.,* 61 F.3d 1250, 1260 (7th Cir. 1995) (testimony recounting calls from consumers was non-hearsay because it was offered "not for its truth . . . but to show that customers were confused"); *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1090–91 (7th Cir. 1988) (considering testimony of plaintiff's employees concerning instances of consumer confusion).

Other factors militate in favor of Plaintiff on this issue, as well. The CHAMPION mark used by Defendant overlaps completely with Plaintiff's mark, when the court disregards the descriptive or generic element (the word "Roofing"), which is less weighty. *See International Kennel Club*, 846

F.2d at 1087–88 (appropriate to give "greater weight" to the "one word or feature of a composite trademark [that] is the salient portion of the mark").  And though Plaintiff has no objection to Defendant's use of the CHAMPION name in connection with window or siding products, Defendant has recently begun using the name in marketing the very same services that Plaintiff provides: roofing installation.

Defendant contends Plaintiff has an obligation to identify the precise locations within the Chicagoland area in which it does business, but this is a quibble; it is undisputed that Plaintiff has performed roofing services on hundreds of occasions in the relevant ZIP codes, and that it markets its services via print and electronic media widely in Chicago, the surrounding suburbs, and parts of southern Wisconsin and northwest Indiana.  As noted, the Champion Roofing mark is a strong one and the evidence of actual confusion confirms that the mark is well-recognized.  Neither side presented evidence on the degree of care that residential consumers take in buying roofing services, but the court takes notice that for most consumers, the purchase of roofing or of roofing repair services is a comparatively infrequent, albeit costly, event.  In any case, even a sophisticated consumer can suffer confusion.  See AM Gen. Corp. v. DaimlerChrysler Corp., 311 F.3d 796, 827–28 (7th Cir. 2002).  The evidence supports a finding that confusion is likely—a finding arguably superfluous here where there is substantial evidence that confusion has actually taken place.

Defendant has suggested that it enjoys prior rights in the CHAMPION mark, but there was no evidence that Defendant engaged in roofing business using that mark until late last year. Champion Window does own a federal trademark registration, but that registration confers priority only "in connection with the goods or services specified in the registration."  15 U.S.C. § 1057(c). As Professor McCarthy has explained, the specification is important because it establishes the registrant's right to use the mark on the goods or services specified.  The specificity requirement protects against the possibility that a registration issued for "vaguely defined goods" may be relied on as evidence of the registrant's "right to use the mark on a particular good not in fact sold by the

8

registrant under the mark." 2 J. Thomas McCarthy, *Trademarks and Unfair Competition* (hereinafter "McCarthy") § 19:48 (1973). As described above, Champion Window's mark is registered for "non-mental new and replacement windows, patio and sliding doors and window screens" and for "installation of replacement windows, window screens, storm windows and siding and construction of sun porches, enclosed patios, and room addition." The registration makes no mention of roofing or roofing services.

It is undisputed that Champion Window has used its name and mark for window and patio installations. And the court will assume that window and patio installations can be characterized as part of a broad class of "home exterior services," as Defendant contends. There is, however, no evidence in the record that Champion Window has in fact been actively engaged in the roofing business in the Chicago area at any time prior to 2012. Defendant appears to be the "senior user" of the word "Champion" in its mark, but in this proceeding, Plaintiff has established that it is the "junior user operat[ing] in a market separate though related" to that of Defendant. Plaintiff is therefore entitled to enforce its mark against the senior user, which has "tolerated for decades" Plaintiff's use of the Champion Roofing name and mark. *See Patsy's Brand, Inc. v. I.O.B. Realty, Inc.,* 317 F.3d 209, 216–17 (2d Cir. 2003) (citing *Dwinell-Wright Co. v. White House Milk Co.*, 132 F.2d 822, 825 (2d Cir. 1943) (L. Hand, J.)). Professor McCarthy appeared to have a situation such as the one in this case in mind when he observed that the junior user's claim to trademark rights prevails where the "senior user let years go by after knowing of the junior use and did nothing until it much later decided to expand." McCarthy § 24.20. Though a senior user is entitled to "bridge the gap" and expand the use of its mark to "related" goods or services, that natural expansion doctrine is limited where the expanded use could result in customer confusion. *Id.*

Champion Roofing has operated openly in the Chicago area since 1999, and has advertised extensively in a variety of media since then. Champion Roofing has sold more than $37 million of roofing services in the area. Champion Window has operated in this area since 2002, as well,

offering a variety of "home exterior services." Though Champion Window's national managers claim to have had no knowledge of Champion Roofing prior to April 2013, Champion Roofing's current office in Bensenville is just two miles from Champion Window's Elmhurst location, (Friedman Decl. ¶ 27), and the Champion Window staff in Elmhurst contacted Champion Roofing, asking for an estimate for roofing services, in 2008. Defendant has, thus, had at least constructive knowledge of Champion Roofing's use of the contested mark for roofing for more than three years, and effectively acquiesced to that use. Indeed, prior to Defendant's attempt to expand into roofing services, there was no reason for either party to object to the other's use of the name "Champion": in the more than ten years that the parties have done business side by side in the Chicago area, there has been no reported instance of consumer confusion. (Tr. 96, 216.) Years of coexistence, without any such report, is powerful evidence that consumers are unlikely to confuse the origin of Plaintiff's roofing services with Defendant's existing window and siding service.

The court concludes that Plaintiff has established rights to the use of the name "Champion Roofing" for roofing services in the Chicago area. There is substantial evidence of actual consumer confusion as a result of Defendant Champion Window's recent entry into the roofing business, using that name, in this area. Plaintiff has shown a likelihood of success on the merits of its trademark infringement claim.

**B.     Irreparable Harm**

The second question for consideration is whether Plaintiff will suffer irreparable harm in the absence of a preliminary injunction. Plaintiff has made a substantial showing on this issue, as well. The Seventh Circuit has explained that "because of the difficulty of quantifying the likely effect" of a period of consumer confusion, "irreparable harm is especially likely in a trademark case." *Kraft Foods Group Brands LLC v. Cracker Barrel Old Country Store, Inc.,* 735 F.3d 735, 741 (7th Cir. 2013). In this case, Plaintiff relies on more than the presumption recognized in the case law. *See, e.g., Promatek Industries, Ltd. v. Equitrace Corp.*, 300 F.3d 808, 813 (7th Cir. 2002) ("it is well

settled that injuries arising from Lanham Act violations are presumed to be irreparable, even if the plaintiff fails to demonstrate a business loss"). Anecdotal evidence of confusion—in particular, evidence that Plaintiff's existing or prospective customers, are disappointed or angry when Plaintiff refuses to honor discounts offered by Defendant—illustrates the loss of goodwill resulting from Defendant's use of the Champion name for roofing services in Chicago. That loss is obviously not quantifiable. In opposing Plaintiff's version of the facts, Defendant notes that "[c]ustomers still hired Plaintiff for certain roofing jobs." (Def.'s Objections and Revision to Pl.'s Findings of Fact and Conclusions of Law [44], ¶ 96.) But the very imprecision in that sentence confirms that the losses to Plaintiff as a result of Defendant's activities cannot be accurately determined. Plaintiff has made a showing of irreparable harm.

## C. Balance of Equities

The court agrees with Plaintiff, as well, that the balance of equities favors issuance of a preliminary injunction. First, because Plaintiff has made a strong showing on the merits, the balance favors injunctive relief. *Promatek*, 300 F.3d at 811 ("the more likely the plaintiff's chance of success on the merits, the less the balance of harms need weigh in its favor") (citing *Abbott Labs.*, 971 F.2d at 12).

Plaintiff Champion Roofing has made a substantial investment in its name, offering roofing repair and replacement services in the Chicago area, using that name and mark, for nearly fifteen years. Champion Roofing has pursued a comprehensive and aggressive advertising campaign in this business, as well. Champion Window, in contrast, has advertised and promoted window and patio room services since 2002, and entered the business of roofing and roofing replacement only several months prior to the preliminary injunction hearing. Up to this time, roofing has represented only a small fraction of Champion Window's business in this area, and Champion Window's local affiliate is, as Defendant's own witness characterized it, a "troubled subsidiary" which has not been profitable overall. (Tr. 179.) Thus, as in *Kraft Foods*, there is "no basis for concluding" that

11

Defendant would suffer great losses from being barred from offering roofing services in this geographic area. 735 F.3d at 741. Moreover, a preliminary injunction need not exclude Champion Window from engaging in the roofing business in the Chicagoland area, though it would require Champion Window to conduct that business under any different, non-confusing name and to make related changes to its advertising programs.

Defendant contends that it has expanded its window and siding business into roofing services on a nationwide basis, and insists that carving the Chicago area out of its promotional efforts would be prohibitively difficult. The evidence on that issue was equivocal, however. First, because Defendant designs and produces its print advertisements in house (Tr. 183, 184, 196), the court presumes it could create and use materials that eliminate reference to roofing services or create new materials that promote those services under a different logo. Defendant creates marketing materials for national use, but does not distribute its materials in all parts of the country; just as Defendant customizes its national materials to make reference to particular local affiliates, Defendant could customize materials distributed in this area to eliminate reference to roofing and/or to promote its roofing services under a different mark. Moreover, although Defendant initially asserted that Internet advertising cannot be tailored to particular regions, an expert retained jointly by the parties explained that it is not only possible, but common, for digital marketers to "geo-target" Internet advertising, such that an advertisement will generally not appear within a particular region or will appear only within a certain defined region. (Tr. 38–44.) Another possible, albeit more costly, "fix" would be for Defendant to arrange for its website to be programmed so that Chicagoland Internet users will be directed to a version of Defendant's website that does not advertise roofing services.

D.     **Public Interest**

The matter of public interest requires only brief discussion. An injunction that prevents consumer confusion in the marketplace serves the public interest. *Promatek*, 300 F.3d at 813-14;

*Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000); *Abbott Labs.*, 871 F.2d at 19; *Int'l Kennel Club*, 846 F.2d at 1092 n.8. The public interest is served by competition, but an order requiring Defendant to provide roofing services under a different name need not have the effect of eliminating competition. Moreover, in light of the fact that Defendant now provides roofing services only through licensed subcontractors (Tr. 157), limitations on its roofing business will not necessarily reduce the availability of roofing services to consumers in the Chicago area. An injunction prohibiting Defendant from using the name Champion to promote such services will ensure that consumers are not misled about the source of those services.

## CONCLUSION

Plaintiff's motion for a preliminary injunction [18] is granted. Defendant's motion for a preliminary injunction [30] is denied.

ENTER:

Dated: December 16, 2013

REBECCA R. PALLMEYER
United States District Judge